**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

TRUSTEES OF THE LOCAL 7 TILE
INDUSTRY WELFARE FUND ET AL.,

                     Plaintiffs,

        -against-

STEP ON IT FLOOR COVERING, INC.,

                     Defendant.

-----------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**

10-CV-00284 (FB)(RER)

**RAMON E. REYES, JR., Magistrate Judge:**

## INTRODUCTION

Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile Industry

Annuity Fund, Trustees of the Local 7 Tile Industry Pension Fund, Trustees of the Bricklayers &

Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute[1]

(collectively, "Plaintiffs") allege that Step On It Floor Covering, Inc. ("Step On It") violated the

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001,

*et seq.*, by failing to make required contributions pursuant to the terms of a collective bargaining

agreement (the "CBA").  Plaintiffs moved for default judgment on March 4, 2011.  (Dkt. No.

11.)[2]  The Honorable Frederic Block subsequently referred the motion to me for a report and

---

[1]  The Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and
Local 7 Tile Industry Pension Fund are collectively referred to hereafter as the "Local 7 Funds."
The Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute
are collectively referred to hereafter as the "International Funds."

[2]  Plaintiffs initially moved for default judgment on March 22, 2010.  (Dkt. No. 5.)  The
Clerk of Court noted entry of default against Step On It on April 13, 2010, (Dkt. No. 6), and

recommendation on the issue of liability and damages.  (Dkt. Entry, 3/4/2011.)

For the reasons that follow, I respectfully recommend that a default judgment be entered against defendants in the amount of $55,254.27.

## FACTS

Plaintiffs are trustees of the Local 7 Funds and International Funds, which are multiemployer benefit funds within the meaning of ERISA.  (Compl. ¶ 4-5); *see also* ERISA, 29 U.S.C. § 1002(3).  Step On It entered into a CBA with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union").  (Compl. ¶ 8; Dkt. No. 11-1.)  Pursuant to the CBA, Step On It must make deductions and contributions to certain Fringe Benefit Funds.[3]  (Compl. ¶ 8; Dkt. No. 11-1.)  The CBA also requires Step On It to pay interest on all late payments, as well as audit costs if it is found to be three or more months delinquent in an amount exceeding $1,000.  (Compl. ¶ 8; Dkt. No. 11-1, Article IX §§ 3(L), (M), (P), 5(G).)

An audit conducted in July 2009 revealed that from February 29, 2008 and September 30, 2008, Step On It failed to make required contributions totaling $51,084.29.  (Compl. ¶¶ 9-10; Dkt. No. 11-2.)  Subsequently, Step On It paid a total of $18,943.62 toward the delinquent amount. (Affidavit of Thomas Lane ("Lane Aff."), dated Feb. 28, 2011, ¶ 7).

thereafter, Judge Block referred the matter to me, (Dkt. Entry, 7/20/2010).  On January 6, 2011, I ordered Plaintiffs to supplement their motion for default judgment so that I could issue a report and recommendation.  After several requests for extensions, I held a telephone conference with Plaintiffs during which Plaintiffs withdrew their outstanding motion and agreed to re-file on March 4, 2011.  (Dkt. Entry, 2/18/2011.)

[3] Exhibit A attached to the CBA details the rate schedule for all deductions and contributions due under the CBA for each subdivision of Union workers.  (Dkt. No. 11-1.)

## DISCUSSION

### I.     Liability

A party's default is deemed to constitute an admission of all well-pleaded factual allegations of liability set forth in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). It is, however, for the court to determine whether such factual allegations establish the defaulting defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 83 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (noting that once a default has been entered a district court "need not agree that the alleged facts constitute a valid cause of action").

In this case, Plaintiffs contend that Step On It violated Section 515 of ERISA, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. A plan member's contractual duty to make contributions pursuant to Section 515 is enforceable in accordance with Section 502, under which a plan fiduciary can bring a civil action to enforce the provisions of the plan or obtain equitable relief. *See* 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1132(d)(1).

Here, Plaintiffs allege that Step On It is a party to the CBA, under which Step On It is obligated to make contributions to Plaintiffs for Union members' hours, and that Step On It has failed to make all such contributions. Thus, Plaintiffs have established Step On It's liability for a violation of ERISA Section 515.

## II.    Damages

While a defendant's default is deemed to constitute an admission of all well-pleaded allegations of liability set forth in the complaint, a plaintiff must still prove damages.  *See Greyhound*, 973 F.2d at 158.  The court must ensure that there is a factual basis for the damages specified in a default judgment, and may do so either by conducting a hearing or relying on affidavits and other documentary evidence.  *See* Fed. R. Civ. P. 55(b); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997) (quoting *Fustok v. Anticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).  Here, Plaintiffs have submitted a declaration by Plaintiffs' counsel Judy Wong, an affidavit of the President of the Tile, Marble & Terrazzo Local No. 7 of N.Y. & N.J., the relevant CBA, an audit report, and attorney billing statements.  (Dkt. No. 11.)  Step On It has not appeared or otherwise defended this suit.  In light of the sufficient documentary evidence provided by Plaintiffs, a hearing in this case is not necessary, and I will determine damages based on the documentary evidence provided.

A plaintiff who has established liability under Section 515 of ERISA is entitled to an award of (1) unpaid contributions, (2) interest on unpaid contributions, (3) liquidated damages, (4) reasonable attorneys' fees and costs, and (5) such other legal and equitable relief as the court may deem appropriate.  29 U.S.C. § 1132(g)(2).  In this case, Plaintiffs seek an award of $55,279.27 which consists of: (1) $32,140.67 in delinquent contributions, (2) $8,739.52 in interest on the delinquent contributions, (3) $3,360.00 in audit costs, (4) $9,199.08 in liquidated damages, and (4) $1,840.00 in attorneys' fees and costs.

### A.    Unpaid Contributions

Plaintiffs seek to recover $32,140.67 in unpaid contributions.  This amount is based on

the payroll audit report issued by Anthony Collazo, (Dkt. No. 11-2), and subsequent partial

payment by Step On It. The payroll audit report—and collection letter sent to Step On It (dated

July 23, 2009)—consists of two summaries of delinquent contributions and supporting records

detailing the contributions owed. According to these records, as of July 23, 2009 Step On It

owed $51,084.29 in delinquent contributions for the period of February 29, 2008 through

September 30, 2008. Since the audit, Step On It has paid $18,943.62. (Lane Aff. ¶ 7.) Upon

review of the auditing records, Step On It owes the amount sought by Plaintiffs—a balance of

$32,140.67 in unpaid contributions.

B.     Accrued Interest

Under the CBA, interest on unpaid contributions accrues at a rate of ten percent (10%)

per annum. (Dkt. No. 11-1, Article IX §§ 3(L), 5(G).) Applying this annual interest rate to the

outstanding sum of $32,140.67 yields a per diem rate of $8.81 per day. Plaintiffs properly

calculated interest from the mid-point of the delinquency period, June 1, 2008,[4] through the date

of the Declaration of Judy Wong ("Wong Decl."), February 17, 2011, as totaling $8,739.52

($8.81 per day for 992 days), and Plaintiffs are entitled to this amount.[5]

---

[4]  When damages are incurred over a period of time, New York law allows for the
calculation of interest from a "single reasonable intermediate date." N.Y. C.P.L.R. 5001(b); *Tr.
of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation &
Holidays, Trade Educ. Fund and 401(k) Sav. Plan v. Generation II Plumbing & Heating*, No.
07-CV-5150, 2009 WL 3188303, at *3 n.2 (E.D.N.Y. Oct. 1, 2009).

[5]  Since it appears that the $18,943.62 partial payment was made after the Complaint was
filed, Plaintiffs also may have been entitled to the accrued interest on that amount. *See Iron
Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel
Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) ("[T]he amount of an award of
interest or liquidated damages should logically be predicated upon the amount of the unpaid
contributions originally at issue, whether or not outstanding at the time of judgment, since that
amount correctly measures the damage caused by the delinquency."). However, Plaintiffs made

C.  Liquidated Damages

Plaintiffs also seek $9,199.08 in liquidated damages. Section 502(g)(2)(C) of ERISA provides for an award of such damages equal to the greater of (1) the interest on the unpaid contributions, or (2) the amount of liquidated damages provided for under the plan not exceeding twenty percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Here, the CBA provides for liquidated damages equal to twenty percent of the contribution delinquency. (Dkt. 11-1, Article IX §§ 3(L), 5(G).) Twenty percent of the delinquent contributions is $9,199.08 as calculated in the audit report,[6] and I respectfully recommend Plaintiffs be awarded the same.

D.  Audit Costs

Plaintiffs seek to recover $3,360.00 in audit costs, and Collazzo's letter to Step On It confirms the cost of the audit. (Dkt. No. 11-2.) Since the CBA expressly provides that audit costs are recoverable if the employer is delinquent for three months in an amount exceeding $1000, and both conditions are met here, Plaintiffs are entitled to these costs. *See Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds*, 68 F.3d at 1507 (awarding auditing costs when the specific "terms and conditions of the CBA . . . obligated [the employer] to pay" them).

---

no request for such interest. Additionally, Plaintiffs have not provided the date of payment of the $18,943.62, making it impossible to correctly calculate the accrued interest. Accordingly, I have made no recommendation regarding interest on the partial payment made after the audit.

[6]  Even though Step On It has paid some of the delinquent contributions, Plaintiffs are entitled to liquidated damages on the full amount due and owing at the time the Complaint was filed. *See Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds*, 68 F.3d 1502, 1506-07. Twenty percent of the total delinquent contribution amount is in fact $10,216.86. However, the audit report excludes the calculation of liquidated damages for certain deductions and contributions; such deductions and contributions are similarly excluded from my calculations.

E.    Attorneys' Fees and Costs

Plaintiffs also seek to recover $1,415.00 in attorneys' fees and $425.00 in litigation costs.

Under the CBA, if Plaintiffs were to employ an attorney to collect unpaid contributions, the

employer would be obligated to pay "reasonable attorneys' fees, and such other costs and

penalties as may be assessed by a court as provided under ERISA."  (Dkt. 11-1, Article IX §§

3(L), 5(G).)  Moreover, under Section 502(g)(2)(D) of ERISA, an award of reasonable attorneys'

fees and costs is mandatory in an action where the plaintiff seeking to recover delinquent

contributions prevails.  *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).

However, the party seeking attorneys' fees must produce contemporaneous time records showing

the dates, hours expended, and nature of work performed by each attorney.  *N.Y.S. Ass'n for

Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

To determine whether attorneys' fees are reasonable, the Second Circuit uses the

"presumptively reasonable fee," which equals a reasonable hourly rate multiplied by a reasonable

number of hours expended.  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009);

*Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008).  District

courts have broad discretion in determining the reasonable rate, but should "bear in mind *all* of

the case-specific variables that . . . have [been] identified as relevant to the reasonableness of

attorney's fees" including: the level of skill required to perform the legal service properly, the

attorney's customary hourly rate, the amount involved in the case and the results obtained, and

the experience, reputation, and ability of the attorneys.  *Arbor Hill Concerned Citizens

Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186-87,

190 (2d Cir. 2008) (referencing and quoting the factors identified in *Johnson v. Ga. Highway

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).  Courts should also consider the prevailing hourly rates of the district where they sit.  *Simmons*, 575 F.3d at 174.

In determining the reasonableness of the hours expended on a case, courts must examine the hours billed "with a view to the value of the work product of the specific expenditures to the client's case."  *Tr. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009).  Courts should exclude from any award "'excessive, redundant or otherwise unnecessary hours.'"  *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 120 (E.D.N.Y. 2010) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

In support of their request for attorneys' fees, Plaintiffs have submitted their counsel's declaration, as well as contemporaneous time records identifying the dates, rates, hours spent, and work performed by their counsel.  (Wong Decl. ¶ 15; Dkt. No. 11-3.)  The billing records show that Plaintiffs' law firm spent a total of 8.45 hours (5.95 attorney hours, 2.5 paralegal hours) litigating this case.  The time was spent primarily drafting and filing the complaint and documents supporting default judgment, and such use of time was not excessive, redundant, or otherwise inappropriate.

For these hours, the firm charged $200 per hour for Judy Wong, associate of Virginia & Ambinder LLP,[7] and $90 per hour for legal assistants.  (Wong Decl. ¶ 15.)  Having reviewed the

---

[7]    Although Wong failed to provide the Court with information concerning her experience, she has pursued numerous ERISA cases before this Court.  *See Masino v. Architectural Pavers Corp.*, No. 09-CV-2213, 2010 WL 415286, at *4 (E.D.N.Y. Jan. 15, 2010) (noting that Wong had at least nine years of labor law experience at the time of the report and recommendation).

rates approved in comparable cases, I find that the rate charged for Wong's services is reasonable

for a total of $1,190 in fees for associates ($200 per hour for 5.95 hours). *See, e.g.*, *Finkel v.*

*Jones Lang LaSalle Americas, Inc.*, No. 08-CV-2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec.

30, 2009) (finding that hourly rates of $235 for senior associates and $225 for junior associates

were reasonable); *Finkel v. Rico Elec., Inc.*, No. 07-CV-2145, 2009 WL 3367057, at *7

(E.D.N.Y. Oct. 16, 2009) (awarding $200 to $235 per hour for associates with three to eight

years of experience). However, Plaintiffs seek $90 per hour for legal assistants, which is slightly

higher than the typical rate in other ERISA default actions. *E.g.*, *Tr. of Plumbers Local Union*

*No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc.*, No. 08-CV-3939, 2010 WL 1265197,

at *4 (E.D.N.Y. Feb. 18, 2010) (reducing hourly rate for paralegal services from $90 to $80);

*Jones Lang LaSalle Americas, Inc.*, 2009 WL 5172869, at *5 (approving $80 per hour for

paralegal services); *Rico Elec., Inc.*, 2009 WL 3367057, at *7 (awarding $75 to $80 for paralegal

services). Since Plaintiffs provide no basis for an increased rate here, I recommend reducing the

hourly rate to $80 per hour for a total of $200 in fees for legal assistants ($80 per hour for 2.5

hours). Accordingly, I respectfully recommend an award of $1,390 in attorneys' fees.

Plaintiffs also seek $425, which consists of the $350 court filing fee and the $75

associated with service of process. (Dkt. No. 11-3.) In a successful action to recover delinquent

contributions, an award of reasonable costs is mandatory, and courts generally award

"[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients."

*Goldberg*, 2009 WL 3497493, at *10; *see also* 29 U.S.C. § 1132(g)(2)(D). Court filing fees and

expenses associated with service of process have been deemed reasonable within the Eastern

District. *See, e.g.*, *Rico Elec., Inc.*, 2009 WL 3367057, at *8 (awarding, among other costs, filing

and service of process fees).  As such, Plaintiffs' request for $425 in costs is reasonable.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that default judgment be entered against Step On It Floor Covering, Inc. in the amount of $55,254.27, comprised of:

(1)     $32,140.67 in delinquent contributions,

(2)     $8,739.52 in accrued interest,

(3)     $9,199.08 in liquidated damages,

(4)     $3,360 in auditing costs and

(5)     $1,815 in attorneys' fees and costs.

Any objections to the recommendations made in this Report and Recommendation ("R&R") must be filed with the Clerk of the Court and the Chambers of the Honorable Frederic Block within fourteen days of receiving this R&R.  Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 6(e), 72; *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  Plaintiffs are hereby directed to serve copies of this R&R on Step On It and to file proof of service with the Clerk of the Court no later than June 10, 2011.


Dated: Brooklyn, New York
       June 6, 2011


*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

10